UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| JAMES A. BARNETT, | ) |
| *Petitioner,* | ) |
| v. | ) No. 1:07-CV-19 |
| | ) *Collier/Lee* |
| WARDEN HOBBS, | ) |
| *Respondent.* | ) |

# MEMORANDUM

This is a petition for the writ of habeas corpus brought pursuant to 28 U.S.C. § 2241 (Court File No. 1).[1] Petitioner James A. Barnett ("Barnett") is a prisoner confined at Correction Corporation of America Silverdale in Chattanooga, Tennessee. Barnett claims he is being illegally detained as a result of an illegal extradition. The detainer is based on charges currently pending in the Criminal Court of Hamilton County. For the following reasons, the Court will dismiss the petition without prejudice for failure to exhaust available state court remedies.

---

[1] Although Barnett actually identified 28 U.S.C. § 2254 as the statute under which his petition was brought, it appears the present action is a pre-trial petition for a writ of habeas corpus and is properly brought under 28 U.S.C. § 2241. *See Norton v. Parke*, 892 F.2d 476, 479 n. 5 (6th Cir. 1989) (IAD properly brought under 28 U.S.C. § 2241), *cert. denied*, 494 U.S. 1060 (1990) *citing, Atkins v. People of State of Michigan*, 644 F.2d 543, 546 n. 1 (6th Cir.), *cert. denied*, 452 U.S. 964 (1981) ("A body of case law has developed holding that although § 2241 establishes jurisdiction in the federal courts to consider pretrial habeas corpus petitions, the courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state courts or by other state procedures available to the petitioner."). Since Barnett is *pro se*, and since prisoners' *pro se* documents should be held to "less stringent standards than formal pleadings drafted by lawyers" the Court will construe this as a § 2241 petition. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, regardless of whether the petitioner is brought under § 2241 or § 2254, the result is the same, *i.e.* dismissal of the petition.

## I. Non-Dispositive Motions

Barnett has filed an application to proceed *in forma pauperis* which indicates a zero balance in his trust account and the same amount during the last six months. Therefore, Barnett does not have sufficient funds to pay the $5.00 filing fee. Accordingly, Barnett's motion to proceed *in forma pauperis* is **GRANTED** (Court File No. 11).

Also before the Court is a motion by Barnett requesting the production of certain specified documents (Court File No. 12). Barnett presumably seeks an order from this Court compelling defendants to produce the requested documents.

Barnett does not indicate, in his motion, that he has sought discovery from defendants pursuant to the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26 & 34. The proper procedure for requesting discovery is to serve defendants with a request for production of documents. Fed. R. Civ. P. 34. If defendants fail to cooperate in discovery, then a person may move to compel discovery pursuant to Fed. R. Civ. P. 37. Nevertheless, since the Court is dismissing the habeas petition the motion to compel discovery is **DENIED as MOOT** (Court File No. 12).

## II. Factual and Procedural Background

Barnett filed this instant petition on or about December 4, 2006. Barnett alleges Tennessee illegally extradited him from the State of Georgia. The record reflects Barnett filed Interstate Detainer Agreement Forms II, III, and IV, on May 6, 2005, requesting disposition of pending charges in Hamilton County, Tennessee. On May 25, 2005, the Hamilton County District Attorney's Office submitted, under the Interstate Detainer Agreement Form VII, Acceptance of Temporary Custody offered in connection with Barnett's request for disposition of the detainer. However, on June 13, 2005, the Georgia Interstate Agreement on Detainer Coordinator advised the Hamilton County District Attorney's Office that they could not pick up Barnett on July 6, 2005,

because there had not been a formal detainer lodged by Tennessee authorities and Barnett's request was premature.

A formal detainer was subsequently lodged by the Hamilton County Sheriff's Office on June 17, 2005, for charges of vandalism, theft of property, and burglary of a business. The record further reflects that Barnett was advised by his prison counselor in August of 2005 to refile Interstate Detainer Agreement Forms II, III, and IV since no formal detainer was filed in May 2005. Barnett refused to file the appropriate forms after the detainer had been formally filed (Court File No. 1;Court File No. 8, Exhibits 1, 2, 3a).

Barnett maintains Hamilton County was required to try him on the pending charges within 180 days from May 6, 2005, the date on which he signed Interstate Detainer Agreement Forms II, III, and IV. Failure to do so, according to Barnett, requires dismissal of the charges. Thus argues Barnett, Hamilton County, relying upon a sixteen month old expired temporary waiver, illegally took custody of him on September 18, 2006, when they transported him to Hamilton County, without having new waiver forms signed by him and without granting him an extradition hearing.

The United States, the State of Georgia, and State of Tennessee are all signatories of the Interstate Agreement on Detainers ("IAD"). Article III of the agreement gives a prisoner the right to demand a final disposition of charges pending against him in another jurisdiction. *See Alabama v. Bozeman*, 533 U.S. 146, 150 (2001). However, Article III refers to a prisoner submitting written notice "whenever . . . there is pending in any other party state any untried indictment, information, or complaint on the *basis of which a detainer has been lodged* against the prisoner. . . ." Tenn. Code Ann. § 40-31-101 (emphasis added). To assert this right, the prisoner must first file a request for

final disposition with the warden or other officer having custody of him. Strictly construing Article III, it appears this request should only be made after a detainer has been lodged. A strict construction of Article III is supported by the Sixth Circuit's requirement that a prisoner must strictly comply with IAD procedures before any untimely or unlawful actions brought against a defendant may be dismissed. *See Norton v. Parke*, 892 F.2d 476, 480(6th Cir. 1989). However, because Barnett has not demonstrated he has exhausted his state remedies, the Court need not conclusively decide this issue.

After the defendant properly submits written notice demanding a final disposition of the charges pending against him in another jurisdiction, the warden then forwards the request to the appropriate state court, as well as the appropriate prosecutor's office. The request must include a certificate stating the term of commitment under which the prisoner is being held, the amount of time already served, the amount of time remaining to be served, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision made in connection with the prisoner's parole. Tenn. Code Ann. § 40-31-101. If the prisoner is not tried within the requisite 180-day period, the

prisoner is entitled to dismissal of the charges with prejudice. The 180-day period commences once "the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer." *Fex v. Michigan,* 507 U.S. 43, 52 (1993).

A state prisoner seeking to challenge the validity of an interstate detainer must first exhaust all available state remedies before filing a federal *habeas* petition. *See Braden v. 40th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488-89 (1973). Such remedies include the remedies provided by the IAD. *See Norton v. Parke,* 892 F.2d at 479 (holding that prisoners must pursue the

4

remedies provided by the IAD before seeking federal *habeas* relief). The exhaustion requirement "protect[s] the state courts' role in the enforcement of federal law and prevent[s] the disruption of the state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 515-18 (1982). However, where circumstances render the exhaustion process ineffective, habeas corpus relief may be considered without requiring a futile exhaustion of remedies. *Lucas v. Michigan*, 420 F.2d 259 (6th Cir. 1970). Nevertheless, "[f]ederal habeas review of alleged IAD violations is limited . . . to errors constituting a 'fundamental defect' resulting in a 'complete miscarriage of justice' or 'an omission inconsistent with redimentary demands of fair procedure.'" *Smith v. Elo*, 23 Fed.Appx. 310, 315 (6th Cir. 2001) (unpublished), *available in* 2001 WL 1216957 (quoting *Reed v. Farley*, 512 U.S. 339, 348 (1994).

It is only under extraordinary circumstances that a federal court will exercise habeas corpus jurisdiction and intrude into state proceedings already underway. The doctrine of comity, a recognition of the concurrent jurisdiction created by our federal system of government in the separate state and national sovereignties, justifies abstention from the exercise of habeas corpus jurisdiction. "[T]he doctrine of exhaustion of state remedies has developed to protect state courts' opportunity to confront initially and resolve constitutional issues arising within their jurisdictions and to limit federal judicial interference in state adjudicatory processes." *Atkins v. People of State of Michigan*, 644 F.2d at 546. This argument is especially forceful and abstention from the exercise of federal jurisdiction is especially warranted in IAD claims because the drastic nature of relief mandated under the Act–dismissal of the case–could not be more disruptive of pending state actions. *Id.*

Barnett acknowledges he has not exhausted his state remedies. Specifically, Barnett admits he refused to refile the necessary documents once the detainer was actually lodged by Tennessee

5

authorities. According to the record, Barnett has not filed a motion to dismiss the Tennessee indictment or taken any other steps in state court to exhaust his remedies prior to filing this habeas petition. However, Barnett attempts to excuse his failure to exhaust remedies arguing circumstances exist that render his state remedies unavailable to him. Barnett asserts that his lawyer, the Hamilton County District Attorney, Judge Rebecca Stern, and Warden Hobbs have all interfered with and blocked his right to move for a dismissal in the state trial court. However, this argument is unpersuasive because Barnett has failed to explain what actions these parties took to block his ability to pursue his state remedies. Barnett's factually unsupported allegation is insufficient to excuse his failure to exhaust state remedies.

Barnett is required to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process" in order to meet the exhaustion requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Barnett may raise his speedy trial claim and his alternate claim of lack of personal jurisdiction in the Tennessee courts by invocation of the IAD and as a defense in any trial on the charges. The Sixth Circuit has concluded "it is in the interest of sound judicial administration, and consistent with established principles, to require . . . prisoners challenging extradition actions [to] pursue the remedies provided by the IAD before seeking habeas relief in federal court." *Norton v. Parke*, 892 F.2d at 480. It does not appear that Barnett has exhausted his state remedies. Not only does it appear that Barnett failed to comply with the formal procedures of the IAD once the detainer was lodged, the record reflects he failed to take any steps in state court to seek relief. It appears Barnett's attempt to invoke the provision of the IAD by filing Forms II, III, and IV prior to the lodging of the detainer was inadequate and there is not evidence he attempted to exhaust his state

6

remedies.

After the detainer was lodged, Barnett refused to complete and submit the required IAD forms to give notice to the Tennessee authorities of his demand for trial. Thus, it appears he has failed to comply with the formalities of the IAD, an issue the Court need not decide today. For the sake of discussion the Court assumes Barnett properly invoked his right to a speedy trial upon completion of the IAD forms prior to the lodging of the detainer; however, his failure to demonstrate he exhausted his adequate and available state remedies prevents this Court from adjudicating his constitutional claims. Barnett is attempting to litigate a federal defense to a criminal charge without offering the Tennessee state courts an opportunity to consider, on the merits, his constitutional claim of the denial of a speedy trial or his alternate claim of lack of personal jurisdiction. Barnett can challenge any issues concerning his extradition in a motion in the criminal case pending in the Tennessee state courts. Because Barnett's submissions failed to establish that he complied with the formal requirements of the IAD or otherwise exhausted all available state remedies, and his submissions fail to establish circumstances exist that render those remedies unavailable to him, the Court will **DISMISS** the petition **WITHOUT PREJUDICE** for failure to exhaust remedies.

An appropriate judgment will enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**